# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK COMMUNITIES FOR CHANGE, MARIA JORDAN AWALOM, MONICA DIAZ, LISA ORTIZ, and GUILLERMO VANETTEN, <br><br>     Plaintiffs, <br><br> v. <br><br> COUNTY OF NASSAU, THE NASSAU COUNTY LEGISLATURE, THE NASSAU COUNTY BOARD OF ELECTIONS, BRUCE BLAKEMAN, in his official capacity as Nassau County Executive, MICHAEL C. PULITZER, in his official capacity as Clerk of the Nassau County Legislature, HOWARD J. KOPEL, in his capacity as Presiding Officer of the Nassau County Legislature, and JOSEPH J. KEARNEY and JAMES P. SCHEUERMAN, in their official capacity as commissioners of the Nassau County Board of Elections, <br><br>     Defendants. | No. 24-cv-08779 |
| HAZEL COADS, STEPHANIE M. CHASE, MARVIN AMAZAN, SUSAN E. COOLS, SUZANNE A. FREIER, CARL R. GERRATO, ESTHER HERNANDEZ-KRAMER, JOHN HEWLETT JARVIS, SANJEEV KUMAN JINDAL, HERMOINE MIMI PIERRE JOHNSON, NEERAJ KUMAR, KAREN M. MONTALBANO, EILEEN M. NAPOLITANO, OLENA NICKS, DEBORAH M. PASTERNAK, CARMEN J. PINEYRO, DANNY S. QIAO, LAURIE SCOTT, RAJA KANWAR SINGH, AMILVIRANI, MARY G. VOLOSEVICH, and THE NASSAU COUNTY DEMOCRATIC COMMITTEE, <br><br>     Plaintiffs, | No. 24-cv-08780 |

v.

NASSAU COUNTY, THE NASSAU
COUNTY LEGISLATURE, THE NASSAU COUNTY
BOARD OF ELECTIONS, BRUCE BLAKEMAN, in his
official capacity as Nassau County Executive, MICHAEL
C. PULITZER, in his official capacity as Clerk of the
Nassau County Legislature, HOWARD J. KOPEL, in his
capacity as Presiding Officer of the Nassau County
Legislature, and JOSEPH J. KEARNEY and JAMES P.
SCHEUERMAN, in their official capacity as
commissioners of the Nassau County Board of Elections,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' JOINT MOTION BY ORDER TO SHOW CAUSE FOR IMMEDIATE REMAND

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 8

    I.    The Notice of Removal is Untimely. ................................................................. 8

    II.   This Court Lacks Subject Matter Jurisdiction ................................................. 12

    III.   Nassau County Failed to Obtain the Consent of All Properly Joined and Necessary Defendants. ................................................................................................................. 16

    IV.   This Motion Warrants Expedited Treatment and Immediate Remand So Trial May Resume Promptly ........................................................................................................... 18

    V.   Plaintiffs Are Entitled to Attorneys' Fees Under 28 U.S.C. § 1447(c). ........................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Bradford v. Harding,*
   284 F.2d 307 (2d Cir. 1960)....................................................................16

*Castillo v. BJ's Wholesale Club,*
   645 F. Supp. 3d 85 (E.D.N.Y. 2022) ....................................................... 20

*Caterpillar Inc. v. Lewis,*
   519 U.S. 61 (1996)..................................................................................18

*Champion v. CVS Albany,*
   No. 22CV7748JMAST, 2023 WL 1766284 (E.D.N.Y. Feb. 3, 2023) ....................9

*City of Rome v. Verizon Commc'ns, Inc.,*
   362 F.3d 168 (2d Cir. 2004)....................................................................13

*Clark v. Ford Motor Credit Co., LLC,*
   No. 13-CV-4242, 2013 WL 5524104 (E.D.N.Y. Oct. 4, 2013)....................8

*Cnty. of Nassau v. New York,*
   724 F. Supp. 2d 295 (E.D.N.Y. 2010) ....................................................13

*Concerned Citizens of Hardee Cnty. v. Hardee Cnty. Bd. of Comm'rs.,*
   906 F.2d 524 (11th Cir. 1990) ................................................................15

*Dunlop v. City of New York,*
   No. 06-CV-433, 2006 WL 2853972 (S.D.N.Y. Oct. 3, 2006)....................16

*Fairfield Cornerstone at Farmingdale LLC v. Pritchett,*
   No. 20-CV-207 (MKB), 2020 WL 1031490 (E.D.N.Y. Mar. 3, 2020) ....................8

*Gunn v. Minton,*
   568 U.S. 251 (2013)..................................................................12, 13, 15

*Hill v. Bacon,*
   No. 05-73773, 2006 WL 335709 (E.D. Mich. Feb. 13, 2006)....................9

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.,*
   824 F.3d 308 (2d Cir. 2016)....................................................................13

*Jimenez-Castro v. Greenwich Ins. Co.,*
   No. 20-CV-09210 (ALC), 2020 WL 7352505 (S.D.N.Y. Dec. 15, 2020)....................18

iv

*Johnson v. Advance Am.*,
  596 F. Supp. 2d 922 (D.S.C. 2008)..................................................................18

*League of Women Voters of Pa. v. Pennsylvania*,
  No. CV 17-5137, 2018 WL 1787211 (E.D. Pa. Apr. 13, 2018) ................................16, 18, 19

*Long Island Roller Rebels v. Blakeman*,
  No. 24-CV-2721, 2024 WL 1793635 (E.D.N.Y. April 25, 2024)..........................................18

*Lupo v. Human Affairs Int'l, Inc.*,
  28 F.3d 269 (2d Cir. 1994)............................................................................8

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005)..................................................................................19

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
  770 F.3d 1010 (2d Cir. 2014).........................................................................12

*Nat'l Ass'n for Advancement of Colored People, Spring Valley Branch v. E. Ramapo Cent. Sch. Dist.*, 462 F. Supp. 3d 368 (S.D.N.Y. 2020) ...............................15

*New York v. Shinnecock Indian Nation*,
  686 F.3d 133 (2d Cir. 2012)..........................................................................13

*Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004)............................................................................8

*Smith v. Kansas City Title & Trust Co.*,
  255 U.S. 180 (1921)..................................................................................15

*Snakepit Auto., Inc. v. Superperformance Int'l*,
  LLC, 489 F. Supp. 2d 196 (E.D.N.Y. 2007).........................................................16, 17

*State by Tong v. Exxon Mobil Corp.*,
  83 F.4th 122 (2d Cir. 2023) .........................................................................13

*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA*,
  116 F.4th 106 (2d Cir. 2024) .....................................................................13, 15

*Vill. of Chestnut Ridge v. Town of Ramapo*,
  No. 07-CV-9278 (KMK), 2008 WL 4525753 (S.D.N.Y. Sept. 30, 2008)................................12

*Wilson v. Target Corp.*,
  No. 10-80451-CIV-MARRA, 2010 WL 3632794 (S.D. Fla. Sept. 14, 2010).............................9

*Zerafa v. Montefiore Hosp. Hous. Co.*,
  403 F. Supp. 2d 320 (S.D.N.Y. 2005).................................................................17

**Statutes**

28 U.S.C. § 1331 ................................................................................................12

28 U.S.C. § 1441(a) .............................................................................................2

28 U.S.C. § 1446(b) ......................................................................................1, 8, 9

28 U.S.C. §1447 .......................................................................................1, 15, 19

52 U.S.C. § 10301 ...........................................................................................3, 14

N.Y. Election Law § 17-206 ...........................................................................3, 15

N.Y. Municipal Home Rule Law § 34(4)(b) ..........................................3, 5, 13, 14, 15

N.Y. Municipal Home Rule Law § 34(4)(e) ........................................................3

**Other Authorities**

14C Wright & Miller, Federal Practice and Procedure: Juris § 3731 ............................9

All plaintiffs in the two above-captioned actions which have been consolidated for trial in state court (collectively, the "Plaintiffs") move this Court to remand this case to Supreme Court of the State of New York, County of Nassau, for further proceedings and to order Defendants County of Nassau, the Nassau County Legislature, Bruce Blakeman, Michael C. Pulitzer, and Howard J. Kopel (collectively, "Nassau County") to pay the Plaintiffs just costs and attorney's fees incurred as a result of its improper removal. *See* 28 U.S.C. § 1447(c).

## INTRODUCTION

*Four days into trial* in these two consolidated state-law redistricting cases and more than ten months after Plaintiffs filed their complaint, Nassau County has filed untimely, improper, and objectively unreasonable Notices of Removal[1] to forestall the resumption of trial after the holiday break. The Court ought to remand immediately.

First, the Notices are untimely on their face. Federal law requires a defendant to file a notice of removal within 30 days after receipt of "an amended pleading, motion, order or *other paper* from which it *may first be ascertained* that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). The Notices here each state: "Plaintiffs . . . first raised the possibility of a substantial federal question being part of their claims in their combined opposition to Defendants' Motion for Summary Judgment." *NYCC* Notice ¶ 13 (citing *NYCC* Notice Ex. P at 26); *accord Coads* Notice ¶ 14. That opposition brief is a paper within the ambit of the removal statute to provide Nassau County with notice of its purported grounds for removability. But the summary judgment opposition brief was filed on November 11, 2024 (Ex. P at 32)—*forty-two*

---

[1] The Notices of Removal in these two consolidated cases are substantially similar, but not identical. The terms "*NYCC* Notice" and "*NYCC* Notice Ex." to refer to the Notice of Removal and attached exhibits in *New York Communities for Change v. County of Nassau*, Case 2:24-cv-08779, ECF 1. The terms "*Coads* Notice" and "*Coads* Notice Ex." to refer to the Notice of Removal and attached exhibits in *Coads v. Nassau County*, Case 2:24-cv-08780, ECF 1.

days before Nassau County filed the Notices on December 23, 2024. Although Nassau County knew or should have known of its purported theory of removability as soon as the *NYCC* complaint was filed more than ten months ago on February 7, 2024 (*NYCC* Notice ¶ 2, Ex. A; *accord Coads* Notice ¶ 2), even from the four corners of the removal notice, there can be no doubt that Nassau County's removal is untimely.

Second, Nassau County's removal theory is frivolous. No Plaintiff has pled a federal claim. Indeed, resolution of Plaintiffs' state-law claims doesn't require the state court to decide a federal law issue. Instead, halfway through a state-court trial, Nassau County now claims that these cases are removable based on the contention that a New York State statute that prohibits racial vote dilution could be interpreted consistently with the federal Voting Rights Act. But New York State's prohibition on racial vote dilution stands on its own—regardless of the federal Voting Rights Act's terms and application. And whether and to what extent the interpretation of state-law statutory protections is informed by persuasive federal authority does not make this case removable at the eleventh hour.

Third, Nassau County admits that it has failed to obtain the consent of all properly joined defendants—namely, the Nassau County Board of Elections and its two commissioners (the "BOE Defendants")—as required by 28 U.S.C. § 1441(a). *NYCC* Notice at ¶ 32; *Coads* Notice ¶ 33. The BOE Defendants are necessary and properly joined parties, responsible for, *inter alia,* administering elections under any remedial map should Plaintiffs prevail at trial. They must be subject to the court's jurisdiction in this matter for Plaintiffs to obtain proper relief. Because of their role in administering elections and implementing any remedy, the BOE Defendants gave input in the case's expedited schedule to address their interest in a timely resolution that will

minimize disruption to the County's 2025 elections. The failure to obtain their consent requires remand.

Nassau County's motive for pursuing a frivolous removal is obvious: to delay an ongoing state-court trial and to prevent Plaintiffs from taking court-ordered discovery of key fact witnesses that has been scheduled before the next day of trial, on January 6, 2025. This Court shouldn't tolerate such vexatious tactics, let alone reward them by affording Nassau County the mid-trial delays it desperately seeks. The Court should expedite resolution of this motion, immediately remand this case to state court without awaiting an opposition from Nassau County, and award attorneys' fees to Plaintiffs.

## BACKGROUND

These consolidated cases are state-law challenges to the 2023 redistricting plan for the Nassau County Legislature (the "Enacted Map"). *See NYCC* Notice ¶ 4; *Coads* Notice ¶ 4. Plaintiffs in both actions claim that the Enacted Map violates the prohibition on partisan gerrymandering in Section 34(4)(e) of New York's Municipal Home Rule Law ("MHRL"). *NYCC* Notice Ex. A (*NYCC* Complaint) ¶¶ 1, 32-33, 94-95; *Coads* Notice Ex. A (*Coads* Complant) ¶¶ 2, 75. Plaintiffs in the *NYCC* action also argue that the Enacted Map dilutes the voting strength of Black, Latino, and Asian communities in violation of the John R. Lewis Voting Rights Act of New York (the "NYVRA"), N.Y. Election Law § 17-206(2)(b)(ii), and Section 34(4)(b) of the MHRL. *NYCC* Notice Ex. A ¶¶ 4, 91.

The plain language of state law protections against racial-vote dilution in the NYVRA and the MHRL shows that they are more expansive than the federal VRA's Section 2, 52 U.S.C. § 10301. But, as Nassau County has recognized since *at least* February 16, 2023, those statutes can be read consistently with well-settled federal racial vote-dilution precedent. *See NYCC* Notice Ex. P (Plaintiffs Consolidated Mem. of L. in Opposition to Defs' Mot. for Summary Judgment) at

13; *Coads* Notice Ex. O (same). For example, on February 16, 2023, Misha Tseytlin, a lawyer who participated in drawing the challenged map *and* represents the County in these actions, testified publicly that the Municipal Home Rule Law's protections against racial vote dilution incorporated the NYVRA's standards and opined that they could and should be interpreted to be consistent with Section 2 of the federal VRA. *See NYCC* Notice Ex. P at 13 (quoting Feb. 16, 2023 testimony of Misha Tseytlin that "[t]he courts may decide that the John Lewis Law is in line with Section 2 of the VRA, and then there would be no constitutional problem"); *see also* Declaration of Perry M. Grossman in support of Plaintiffs Joint Motion by Order to Show Cause for Immediate Remand[2] ("Grossman Decl."). ¶ 15, Ex. 1 (February 16, 2023 Memorandum) at 5-7); *id.* ¶ 16, Ex. 2 (Transcript of February 16, 2023 Nassau County Legislature Meeting) at 28:2-31:17 (testimony of Mr. Tseytlin). Defendants have thus understood the possible ways in which federal precedent can inform the application of state law that they now raise to this Court as a removable federal issue since at least February 2023.

The plaintiffs in each action filed their claims in state court, and the cases were coordinated for discovery and consolidated for trial (*NYCC* Notice ¶ 2). Since then, the parties and court have proceeded on an expedited schedule to resolve this matter in time to avoid disrupting the 2025 elections for Nassau County Legislature, which begins with the petitioning period in late February 2025. (*NYCC* Notice Ex. C, at 4-5). The Defendants Nassau County Board of Elections and Commissioners Kearney and Scheuerman (collectively, the "BOE Defendants") are, respectively, the agency and officials responsible for administering Nassau County elections and would be responsible for implementing any remedy in this case. *See, e.g.*, *NYCC* Notice Ex. A (*NYCC*

---

[2] *See also* Declaration of David L. Mejias in support of Plaintiffs Joint Motion by Order to Show Cause for Immediate Remand, which, with the exception of Paragraph 1, is substantively the same and submitted on behalf of the *Coads* Plaintiffs.

Complaint ¶¶ 18, 22-23); *NYCC* Notice Ex. D (Answer ¶ 18, 22-23)). They were consulted on case scheduling during a March 2024 court conference and changes were made to the expedited schedule Plaintiffs initially proposed to address concerns about having adequate time to implement a remedy. *NYCC* Notice Ex. C at 4-5; Grossman Decl. ¶ 7.

On October 21, 2024, Nassau County moved for summary judgment. Among other arguments, Nassau County argued that the NYVRA's protections against racial vote dilution— and, by extension those found in the MHRL, which are inclusive of the NYVRA's protections— are unconstitutional. However, the County recognized, as it had previously, that those state-law protections would be constitutional insofar as they are interpreted consistently with Section 2 of the federal VRA. *NYCC* Notice Ex. P at 12-13.

In their November 11, 2024 opposition to Nassau County's motion, Plaintiffs argued that the protections against vote dilution found in Section 34(4)(b) of the MHRL "are *at least* co-extensive with Section 2 of the Federal Voting Rights Act of 1965." *NYCC* Notice Ex. P at 1-2 (emphasis added). Plaintiffs also argued that even if the NYVRA were interpreted to be merely co-extensive with Section 2 of the VRA, Plaintiffs would prevail. *Id.* at 22-32. Plaintiffs proceeded to demonstrate how their evidence would suffice to prove a state law racial vote dilution, even if those state laws were only co-extensive with federal protections against racial vote dilution. *Id.* at 26-32.

The Notices shows that Nassau County recognized and had an opportunity to address these arguments in their reply brief, dated November 19, 2024. *NYCC* Notice ¶ 14 & Ex. Q at 1, 8-13; *Coads* Notice ¶ 15 (same). In its reply brief, the County asserted that the Plaintiffs' racial vote dilution claim under the MHRL "is duplicative of the . . . NYVRA claim[] on which [Nassau County] sought summary judgment." *NYCC* Notice Ex. Q at 1 n.1. In that brief, Nassau County

stated: "Plaintiffs base their defense of their NYVRA claim on the assertion—made for the first time in this litigation—that they 'have adduced evidence to make out a [federal VRA] Section 2 claim' by satisfying the three *Gingles* preconditions." *Id.* at 11. Nassau County used its reply brief to argue that state law protections against racial vote dilution could not be interpreted to be consistent with the federal VRA and that, in any event, Plaintiffs could not meet those standards of proof. *Id.* at 8-13. The trial court denied Nassau County's motion for summary judgment in its entirety on December 6, 2024. *NYCC* Notice Ex. N.

Trial commenced in these two consolidated cases on December 17, 2024—thirty-six days after Plaintiffs opposed the County's summary judgment motion. *NYCC* Notice ¶ 15, Ex. R. During his opening statement, counsel for Nassau County voiced his view that: "The notion that there was a Section 2 VRA claim in this case was mentioned for the first time in the[] opposition to the summary judgment brief." *NYCC* Notice Ex. R at 96:24-97:3 (opening statement of Mr. Tseytlin); *see id*. at 110:4-9 (arguing "[t]he first suggestion" that plaintiffs "were doing a Section 2 theory" "came in their summary judgment briefing") (emphasis added).

On December 20, 2024, on the morning of the fourth day of trial and thirty-nine days after Plaintiffs' opposed the County's summary judgment motion, Nassau County counsel raised with the trial court the issue of its claimed grounds for removal. *NYCC* Notice Ex. S at 676-85. On the record, the trial court made clear that it did not understand Plaintiffs to assert (and that it would not *allow* Plaintiffs to assert) a federal claim under Section 2 of the Voting Rights Act. *Id.* at 679:9-24. Justice Marx also recognized Nassau County's mid-trial efforts to manufacture grounds for removal by claiming Plaintiffs' state-law claims necessarily implicated federal issues. *Id.*

On the evening of December 23, 2024, Nassau County filed its Notices—*forty-two* days after ascertaining for the first time the grounds for removal that their filings to this Court claim raised a removable federal issue. *NYCC* ECF 1; *Coads* ECF 1.

Nassau County's dilatory conduct in seeking removal not only seeks to end-run a state-court trial already in progress, but it is also consistent with a pattern of delays to discovery it has vigorously resisted all the way to New York's high court. Since April, Plaintiffs have sought discovery from two members of the team responsible for drawing the Enacted Map—Mr. Tseytlin and a consultant named Sean Trende. *NYCC* Notice Ex. J at 3-4 (noting subpoenas issued to Mr. Tseytlin and Dr. Trende in April 2024); *id.* at 9, 12 (describing Mr. Tseytlin's and Dr. Trende's role in drawing the challenged map). The County and those witnesses filed motions to quash the subpoenas, which were denied. *NYCC* Notice Ex. J. The County and witnesses then took interlocutory appeals from those orders, but the Appellate Division, Second Department unanimously affirmed the trial court's orders in full on October 11, 2024. *NYCC* Notice Ex. O; Grossman Decl. ¶ 10. The County, Mr. Tseytlin, and Dr. Trende then filed a motion for leave to appeal to the New York Court of Appeals, but that motion was denied on December 12, 2024. Grossman Decl. ¶ 11.

The County, Mr. Tseytlin, and Dr. Trende finally produced some of the documents subject to the order compelling discovery on December 17, 2024. *NYCC* Notice Ex. S at 675:10-13. During trial on December 20, 2024, Justice Marx stated that he expected depositions for Dr. Trende and Mr. Tseytlin to be completed before trial resumed on January 6, 2025. *Id.* at 891:14-19. During the afternoon of December 23, 2024, the parties discussed dates for Dr. Trende's and Mr. Tseytlin's depositions. Grossman Decl. ¶ 13. Plaintiffs first learned of Nassau County's removal notice via the electronic docket in state court later that evening. Grossman Decl. ¶ 14.

## ARGUMENT

"In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (internal quotation marks and citation omitted). As the party seeking removal, Nassau County "bears the burden of proving that the jurisdictional and procedural requirements have been met." *Fairfield Cornerstone at Farmingdale LLC v. Pritchett*, No. 20-CV-207 (MKB), 2020 WL 1031490, at *1 (E.D.N.Y. Mar. 3, 2020); *see Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.").

## I.     The Notice of Removal is Untimely.

Federal law requires a defendant to file a notice of removal within 30 days of the date after receipt of "an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). "This thirty-day filing period, while not jurisdictional, is mandatory and failure to comply with it will defeat a defendant's removal petition." *Clark v. Ford Motor Credit Co., LLC*, No. 13-CV-4242, 2013 WL 5524104, at *1 (E.D.N.Y. Oct. 4, 2013) (citations and internal quotation marks omitted). "[A]bsent a finding of waiver or estoppel, federal courts rigorously enforce the [] thirty-day filing requirement." *Fairfield Cornerstone*, 2020 WL 1031490, at *2.

Each Notice is untimely on its face. Nassau County admits that it waited over 30 days to remove these actions after the County asserts its grounds for removability was first ascertainable. The Notices each claim: "Plaintiffs in the State Court Actions first raised the possibility of a substantial federal question being part of their claims in their combined opposition to Defendants'

Motion for Summary Judgment." *NYCC* Notice ¶ 13 (citing Ex. P at 26); *accord Coads* Notice ¶ 14. "The definition of 'other paper' is broad and may include any formal or informal communication received by a defendant." *Wilson v. Target Corp.*, No. 10-80451-CIV-MARRA, 2010 WL 3632794, at *2 (S.D. Fla. Sept. 14, 2010) (citing *Yarnevic v. Brinks's, Inc.,* 102 F.3d 753, 755 (4th Cir.1996)); *see* 14C Wright & Miller, Federal Practice and Procedure: Juris § 3731 (Rev. 4th ed.) ("The federal courts have given the reference to "other paper" an expansive construction and have included a wide array of documents within its scope.") (collecting cases). Plaintiffs consolidated brief in opposition to summary judgment is an "other paper" within the ambit of the removal statute. *See Hill v. Bacon*, No. 05-73773, 2006 WL 335709, at *2 (E.D. Mich. Feb. 13, 2006) ("briefs constitute 'other papers' . . . 'from which it may first be ascertained that the case is one which is or has become removable . . . .'"). But it was filed on November 11, 2024 (*NYCC* Notice Ex. P at 32)—42 days before Nassau County tried to remove this action. The Court should reject Nassau County's Notice as untimely.

Nassau County suggests that the removal application is timely under 28 U.S.C. § 1446(b) "because Defendants have filed this Notice of Removal; within thirty days after receipt' of the 'order . . . from which it may first be ascertained that the case is one which is or has become removable.'" *NYCC* Notice ¶ 29; *Coads* Notice ¶ 30. But the County elides the critical language that defeats its petition. Quoted in full, the statute provides:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or <u>other paper</u> from which it <u>may first be ascertained</u> that the case is one which is or has become removable.

(emphasis added).

Contrary to the County's argument, its removal clock didn't run from when it tried to manufacture grounds for removability in a colloquy with the court at trial. *See NYCC* Notice ¶ 29;

*Coads* Notice ¶ 30. Instead, the County's clock ran from when its purported grounds for removal were first ascertainable from any "motion" or "other paper" served or otherwise provided to Nassau County. *See Champion v. CVS Albany*, LLC, No. 22CV7748JMAST, 2023 WL 1766284, at *2 (E.D.N.Y. Feb. 3, 2023) (finding removal untimely and ruling that a "mediation submission constitutes an 'other paper' and, thus, can trigger the 30-day window for Defendant to remove the case under § 1446"). Here, as explained above, the Notices of Removal themselves confirm that the County's purported basis for removability was "ascertainable" from the face of the Opposition brief. *See, e.g.*, *NYCC* Notice ¶ 13. Both Nassau County's summary judgment reply brief and Mr. Tseytlin's opening statement acknowledge as much. *See NYCC* Notice Ex. Q at 11 (asserting that Plaintiffs' claimed for the "first time" in their opposition brief that they had "adduced evidence to make out a [federal VRA] Section 2 claim[.]"); *NYCC* Notice Ex. R at 96:24-97:3 (in opening statement, Mr. Tseytlin accuses of Plaintiffs' of asserting a theory relying on the federal VRA in opposition to summary judgment). Thus, Plaintiffs' memorandum of law opposing summary judgment would have triggered the 30-day window to remove these cases based on the grounds—albeit improper ones—Nassau County has asserted in their Notices.

In any event, notwithstanding its position to this Court, the well-developed record currently on trial in state court shows that Nassau County was aware of its claimed grounds for removability long before November 23, 2024—that is, the date 30 days before the County filed its removal petition.

On February 16, 2023, Nassau County's trial counsel provided the Legislature with a memorandum and testified publicly that the Municipal Home Rule Law's protections against racial vote dilution incorporated the standards of the NYVRA and those state law protections could be

interpreted in a manner consistent with Section 2 of the federal VRA. See *NYCC* Notice Ex. P at 13; Grossman Decl. ¶ 15, Ex. 1 (February 16, 2023 Memorandum) at 5-6.

Mr. Tseytlin's February 16, 2023 memorandum to the Legislature makes clear that the NYVRA and MHRL could be interpreted in a manner consistent with the federal VRA. Indeed, it suggests that they must be so interpreted: "The proposed map also complies with Section 2 of the VRA, . . . . *Accordingly, the proposed map complies with the NYVRA, as well as all other related legal requirements applicable to the consideration of race in redistricting.*" Grossman Decl. ¶ 15, Ex. 1 at 5-6 (emphasis added); *see also id.* ¶ 16, Ex. 2 (Transcript of February 16, 2023 Nassau County Legislature Meeting) at 28:2-31:17 (testimony of Mr. Tseytlin that to determine whether a proposed redistricting plan complied with the NYVRA "what we did is we looked at the same Section 2 voting rights and analysis that Sean Trende had done").

Echoing, and indeed citing the advice of counsel, at least one of the removing Defendants testified in a June 11, 2024 deposition that they were aware of their theory of removability. Howard J. Kopel, the Presiding Officer of the Nassau County Legislature who is a defendant himself and who was the designated representative deponent for the Defendant Nassau County Legislature testified repeatedly that the NYVRA must be interpreted to be consonant with federal law. Grossman Decl. ¶ 17, Ex. 3 (Kopel Dep. Tr. 203:2-20); *see, e.g. id.* at 201:3-202:7; 204:9-207:2; 207:4-210:15.

It is therefore simply not credible that Nassau County was caught off guard by Plaintiffs' reference to the VRA and its overlapping elements and evidence at trial. Rather, Nassau County either knew or should have known that Plaintiffs could make these arguments about the interpretation of state-law protections against racial vote dilution when the complaint was filed on February 7, 2024.

The 30-day temporal limitation on filing a notice of removal is designed to prevent exactly what Defendants try to do now. It serves two purposes: first, "it forecloses a defendant from adopting a 'wait and see' approach in the state court;" second, it "minimizes the delay and waste of resources involved in starting a case over in federal court after substantial proceedings have taken place in the state court." *Vill. of Chestnut Ridge v. Town of Ramapo*, No. 07-CV-9278 (KMK), 2008 WL 4525753, at *3 (S.D.N.Y. Sept. 30, 2008).

As explained below, Nassau County's theory of removal is wrong: there is no removable federal issue at play in the underlying action. But even if one credits its argument, removal fails because it is too late. Within thirty days of receiving Plaintiffs' opposition papers on summary judgment on November 11, 2024, prior to trial commencing on December 17, 2024, Nassau County could have attempted to remove the cases. It didn't and instead proceeded to trial, where a state court has now heard opening arguments and taken *four days* of witness testimony and evidence—a substantial portion of Plaintiffs' case. Nassau County adopted a "wait and see approach in state court" and has maximized the delay and waste of judicial resources by trying to spirit away this case to federal court halfway through trial without grounds to do so. The Court should reject the removal application as untimely and remand this case immediately, not least, so trial may continue with as little delay as possible.

## II.    This Court Lacks Subject Matter Jurisdiction

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim most directly "arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Even so, the Supreme Court has recognized a "'special and small' category of actual state claims that present significant, disputed issues of federal law." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) (quoting *Gunn*, 568 U.S. at 258); *accord*

12

*Cnty. of Nassau v. New York*, 724 F. Supp. 2d 295, 302 (E.D.N.Y. 2010) (granting Nassau County's motion to remand). "[F]ederal jurisdiction does not exist simply because a state law claim may implicate a federal issue." *Id.* at 302 (citing *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 701 (2006) (explaining that "it takes more than a federal element 'to open the arising under door.'" (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313 (2005))).

To fall within the special and small category of state-law claims that confer federal-question jurisdiction, a state-law claim must contain a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 313-14 (2005); *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA,* 116 F.4th 106, 115 (2d Cir. 2024). All four requirements must be met for federal jurisdiction to lie.

<u>*Necessarily Raised*</u>. For a "federal issue" to be "necessarily raised," *Gunn*, 568 U.S. at 258, the "mere presence of a federal issue in a state cause of action" is not enough. Rather, a "question of federal law" must be "a necessary element of one of the well-pleaded state claims." *City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 176 (2d Cir. 2004) (quoting *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). A "state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 314). Conversely, if a "court could . . . resolve[ ] the case without reaching the federal issues," then "the claims do not necessarily raise a federal issue." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140-41 (2d Cir. 2012); *see also State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140-141 (2d Cir. 2023).

13

Here, Nassau County argues that the NYCC Plaintiffs' racial vote-dilution claim under the New York Municipal Home Rule Law necessarily raises an issue of federal law because the plaintiffs have argued that Section 34(4)(b) of the New York Municipal Home Rule Law "incorporates the standards of Section 2 of the federal Voting Rights Act, such that Plaintiffs intend to show that they can meet those federal standards so succeed on their state law claim." Notice at 9. But that is not enough.

The New York Municipal Home Rule Law, as amended in 2021, requires political subdivisions in the state to comply with certain standards when enacting any redistricting plan. The provision at issue here provides that "[d]istricts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minority groups to participate in the political process or to diminish their ability to elect representatives of their choice." N.Y. Mun. Home Rule L. § 34(4)(b). The text of the first clause of subsection 4(b) shares certain words with Section 2 of the federal Voting Rights Act, which provides in relevant part as follows:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

52 U.S.C. § 10301(a). But subsection 4(b) of the New York Municipal Home Rule Law has yet to be authoritatively construed by New York courts, and it is not yet clear what the essential elements of a claim under that provision might be.

What is clear, however, is that a violation of federal law isn't one of them. Nor is the claim premised on a violation of federal law in any way. Despite the similar language, the protection afforded by subsection 4(b) is separate and apart from the protection that might be afforded by Section 2 even if the proof may be similar. If Congress were to repeal Section 2, for example, a claim under subsection 4(b) would remain. Similarly, if the Supreme Court were to conclude that

14

coalition claims[3] are not cognizable under Section 2, that would not necessarily foreclose such a claim under subsection 4(b), which are independently authorized under state law, *see* N.Y. Election Law § 17-206(8) ("Coalition claims permitted"); *see also id.* at § 17-206(2)(c)(iv) ("where there is evidence that more than one protected class of eligible voters are politically cohesive in the political subdivision, members of each of those protected classes may be combined").

This case is nothing like the "classic example" of a state-law claim that necessarily raises a federal issue: *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), a suit by a shareholder claiming that the defendant corporation could not lawfully buy certain bonds issued by the federal government because their issuance was unconstitutional. *Grable*, 545 U.S. at 312. Nor is it anything like *Gunn*, in which the Supreme Court found that the plaintiff's state-law malpractice claim depended on whether he would have prevailed in his federal patent infringement case if his lawyers had handled the case differently. 568 U.S. at 259. And Nassau County hasn't identified any cases in which a court has found a federal issue necessarily raised under circumstances like those here.

Because the NYCC plaintiffs' claim under Section 34(4)(b) of the New York Municipal Home Rule Law does not raise an issue of federal law, this Court lacks jurisdiction and need not consider the other elements of the *Grable* framework.[4] *See Sunvestment*, 116 F.4th at 115.

---

[3] "Coalition claims" are racial vote dilution claims predicated on the fact that two or more minority groups may be treated as a single minority group if it can be established that "they behave in a political cohesive manner." *Concerned Citizens of Hardee Cnty. v. Hardee Cnty. Bd. of Comm'rs.*, 906 F.2d 524, 526 (11th Cir. 1990); *see Nat'l Ass'n for Advancement of Colored People, Spring Valley Branch v. E. Ramapo Cent. Sch. Dist.*, 462 F. Supp. 3d 368, 379 (S.D.N.Y. 2020) ("[D]iverse minority groups can be combined to meet VRA litigation requirements"), *aff'd sub nom. Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213 (2d Cir. 2021).

[4] Nassau County does not argue that the Coads or NYCC Plaintiffs' partisan-gerrymandering claims or the NYCC Plaintiffs' claim under the New York Voting Rights Act raise federal issues.

### III.    Nassau County Failed to Obtain the Consent of All Properly Joined and Necessary Defendants.

Under 28 U.S.C. § 1447, Plaintiffs may bring a motion for remand based on any defect in the notice of removal. *Dunlop v. City of New York,* No. 06-CV-433, 2006 WL 2853972, at *2 (S.D.N.Y. Oct. 3, 2006). Defendants' attempt to remove this action is separately defective because all Defendants have not consented to removal. When a civil action is removed solely under subsection 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action—a requirement known as the rule of rule of "unanimity." *Bradford v. Harding*, 284 F.2d 307, 309 (2d Cir. 1960). "Unanimity" is a precondition to removal. *Snakepit Auto., Inc. v. Superperformance Int'l*, LLC, 489 F. Supp. 2d 196, 202 (E.D.N.Y. 2007).

As the Notices admit, Defendants Nassau County Board of Elections ("BOE"), Joseph Kearney and James Scheuerman have not consented to removal, rendering Defendants' notice defective and remand appropriate. *See NYCC* Notice ¶ 32; *Coads* Notice ¶ 33; *Snakepit Auto. Inc.*, 489 F. Supp. 2d at 202 ("absent consent of all parties, the removal petition is defective, and the usual course of conduct is for the federal court to remand the action back to state court.") (citations omitted). The Court can remand on this basis alone.

Recognizing this deficiency, Nassau County invokes one of the exceptions to the unanimity rule, self-servingly positing that the BOE is a "nominal" or "formal" party. Not so. A nominal party for purposes of removal is one that is neither "necessary nor indispensable to the suit." But a party *is* "necessary and indispensable" to a suit if a plaintiff seeks relief directly from the party. *League of Women Voters of Pa. v. Pennsylvania*, No. CV 17-5137, 2018 WL 1787211, at *4 (E.D. Pa. Apr. 13, 2018), *aff'd in part, rev'd in part and remanded sub nom*. *League of Women Voters of Pa. v. Commonwealth of Pennsylvania*, 921 F.3d 378 (3d Cir. 2019).

16

Plaintiffs seek relief directly from these nonconsenting parties. The BOE and its Commissioners are necessary, not nominal parties in this action because they are charged with administering elections in Nassau County. Plaintiffs' "Prayer for Relief" in this action requests that "Defendants be enjoined from conducting any elections under the Map." *NYCC* Notice Ex. A at 34; *see Coads* Notice Ex. A at 22 ("enjoin the Nassau County Board of Elections from conducting any future elections under the 2013 map or the 2023 map"). If Plaintiffs were to prevail, such an injunction would have to extend to the BOE and its Commissioners to ensure that Plaintiffs obtain full relief. Moreover, the Commissioners and the BOE would play a critical role in implementing any court-ordered remedies. The Commissioners and the BOE have appeared in these state court actions and advocated for its expeditious resolution to ensure that the BOE and Commissioners had sufficient time to implement any remedy. Grossman Decl. ¶ 7. These parties are not nominal defendants.

The Defendants cite two cases to avoid the rule of unanimity that are easily distinguished. In *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 327 (S.D.N.Y. 2005), for example, Defendant Montefiore Hospital Housing Company, Inc. ("MHHC") was deemed a nominal defendant in a personal injury action brought by a housekeeper for Montefiore Medical Center, where there was no evidence that MHHC actually owned the property, and no action could be stated as against that entity. In the other case cited by Defendants, *Snakepit Automotic, Inc. v. Superperformance International, LLC*, 489 F. Supp. 196, the Court *granted* Plaintiffs' motion to remand, finding that there was no evidence that the non-consenting parties were "nominal" or "formal" parties.

The same is true here. Plaintiffs Complaint names the BOE and Commissioners Kearney and Scheuerman as Defendants and request relief from them in the form of not proceeding with

election under the contested 2023 map. There is nothing "nominal" or "formal" about them, even if counsel for the other Defendants has taken the lead in defending the case. *See League of Women Voters of Pa. v. Pennsylvania*, No. CV 17-5137, 2018 WL 1787211, at *4 (state executive defendants were not "nominal defendants" for purposes of removal based on their role in the redistricting process).

## IV.    This Motion Warrants Expedited Treatment and Immediate Remand So Trial May Resume Promptly.

This Court can and should remand this case to resume trial in state court immediately. A federal district court in this circuit need not wait for a motion, let alone an opposition, before remanding an improperly removed case to state court. *See Jimenez-Castro v. Greenwich Ins. Co.*, No. 20-CV-09210 (ALC), 2020 WL 7352505, at *2 (S.D.N.Y. Dec. 15, 2020). "A district court can remand *sua sponte* on procedural grounds within thirty (30) days of the filing of the notice of removal," for example, where a removal petition is untimely. *Id.* (remanding where defendant removed the case 39 days after receiving the complaint). It can also do so "at any time if the district court finds that it lacks subject matter jurisdiction." *Id.* Removals "call[] for expeditious superintendence by district courts," *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76 (1996), and there is a particular need to act with urgency on a motion to remand where the removal is used "merely as a delay tactic in litigation," *Johnson v. Advance Am.*, 596 F. Supp. 2d 922, 930 (D.S.C. 2008); *Long Island Roller Rebels v. Blakeman*, No. 24-CV-2721, 2024 WL 1793635, at *3 (E.D.N.Y. April 25, 2024) (granting plaintiff's motion to remand and quickly reversing Nassau County's frivolous attempt at removal because it "lacked an objectively reasonable basis for seeking removal" and the court could not view the County's attempt removal "as anything other than a delay tactic").

Any delay in resolving this motion would substantially prejudice Plaintiffs. Trial in this matter is *ongoing* and the state trial court has proceeded expeditiously to avoid disruption to the

2025 election calendar, which begins at the end of February 2025. Trial began in this matter on December 17, 2024, and four expert witnesses took the stand during that week. Trial is set to resume at 9:30a.m. on January 6, 2025, with another expert scheduled to testify that day. In the interim, Plaintiffs are scheduled to take two depositions that the trial court initially ordered for August 2024, but which Nassau County has desperately resisted; and indeed, continues to resist through this removal attempt. If this case is not remanded promptly, the delays could disrupt the 2025 electoral calendar, including postponing the candidate petitioning period and potentially the date of the primary elections for the Nassau County Legislature.

Given the clear lack of removal jurisdiction here, and the urgent need to expedite the state court proceeding to ensure that there can be new, lawful districts in place for the 2025 elections, this Court should remand this matter immediately. Any delay in remanding this case would reward Defendants' tactics and abuse of the judicial process, and would place Nassau County voters at severe risk of again having to vote in districts that violate their legal rights. Plaintiffs respectfully request that, if Defendants are afforded an opportunity to respond to this motion, they be given at most two days. *See, e.g.*, *League of Women Voters of Pa.*, 2018 WL 1787211, at \*1-2 (remanding partisan gerrymandering lawsuit to state court after emergency hearing convened hours after plaintiffs filed emergency remand motion).

### V.  Plaintiffs Are Entitled to Attorneys' Fees Under 28 U.S.C. § 1447(c).

When removal is improper, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Courts may award attorney's fees under § 1447(c) "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Because 28 U.S.C. § 1447(c) is designed to deter improper removal actions, courts have also recognized that untimely or frivolous removal actions countenance the

award of attorneys' fees. Defendants do not set out any objectively reasonable basis for removal, and their removal action is also untimely and frivolous. Thus, this Court should award attorneys' fees and costs.

Where a court's lack of jurisdiction is "obvious 'from the face of the [removal] petition,'" a party lacks an objectively reasonable basis for removal." *Castillo v. BJ's Wholesale Club*, 645 F. Supp. 3d 85, 95 (E.D.N.Y. 2022) (quoting *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 328-29 (S.D.N.Y. 2007)). Here, even crediting Nassau County's contrived basis for removal, the untimeliness of the petition is readily apparent from the face of the Notice. *See* Section I *supra*. That the Defendants waited to file their removal petition only after a full week of trial was in the books—notwithstanding that they were on notice of their purported grounds for removability for over a month before their opening statement—is evidence of Nassau County's bad faith tactics.

Dated: New York, New York           Respectfully submitted,
      December 26, 2024

NEW YORK CIVIL LIBERTIES           MEJIAS, MILGRIM, ALVARADO & LINDO,
FOUNDATION                         P.C.

*/s/ Perry M. Grossman*            */s/ David Mejias*
Perry M. Grossman                  David Mejias
Terry T. Ding                      Randi Milgrim
125 Broad Street                   One Dosoris Lane
New York, NY 10004                 Glen Cove, New York 11542
(212) 607-3300
pgrossman@nyclu.org                THE LAW OFFICE OF
tding@nyclu.org                    BRYAN L. SELLS, LLC

*Attorneys for Plaintiffs New York*   Bryan L. Sells (pro hac vice pending)
*Communities for Change, Maria Jordan*  Post Office Box 5493
*Awalom, Monica Diaz, Lisa Ortiz, and*  Atlanta, Georgia 31107-0493
*Guillermo Van Etten*                 Phone: (404) 480-4212
                                   bryan@bryansellslaw.com

                                   *Attorneys for Plaintiffs Hazel Coads et al.*